UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Case No. 24-24067-rmb |
| Mai L. Vang and Ue Yang, | Chapter 7 |
| Debtors. | |

| | |
|---|---|
| Long Lee, et al., | |
| Plaintiffs, | |
| v. | Adversary No. 24-2153-rmb |
| Mai L. Vang and Ue Yang, | |
| Defendants. | |

**DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT
AND PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

Plaintiffs Long Lee, Miana Lee, Unlimited Wealth, LLC, David Blong, and Mee Lee (the "Lee Parties") are victims of Kay Yang, who ran a fraudulent investment scheme in Wisconsin. The Lee Parties say that Yang used some of the funds they invested with her to make below-market mortgage loans to several third parties, including to debtor-defendants Mai L. Vang and Ue Yang (the "Debtors"). The Lee Parties obtained an order in state court determining that the Debtors' mortgage loan from Yang's company and several other such loans were fraudulent transfers under chapter 242 of the Wisconsin Statutes. They now seek to have the resulting debt declared nondischargeable under 11 U.S.C. § 523(a)(2)(A). The parties filed cross motions for summary judgment on the nondischargeability claim

and a claim requesting a declaration as to the Debtors' homestead exemption. The Lee Parties also filed a motion to amend their complaint to add another claim for a declaration related to the mortgaged property. The Debtors' motion for summary judgment as to the Lee Parties' claim for a declaration that the Debtors cannot claim a homestead exemption in bankruptcy is granted and that claim is dismissed with prejudice. As to the remaining issues, neither party sustained their burden on summary judgment, and material factual disputes remain. The Lee Parties also have not shown that their late amendment should be allowed because the amendment would prejudice the Debtors, and it is futile in any event.

## BACKGROUND

### Lee Parties' Investment with Kay Yang

The Lee Parties invested with a company called AK Equity Group, LLC owned by Kay Yang. Yang solicited funds from investors and asked them to wire funds to a bank account at Capital One Bank. The Lee Parties deposited a total of $1,770,000 into the Capital One account between January 25, 2019 and May 30, 2019, believing that they were investing with Yang and AK Equity. (Miana Lee Decl., ECF 27, ¶¶ 3-4.) AK Equity purported to pool and trade investor funds through various offshore brokerage accounts. (Halloin Decl. Ex. 1, ECF 26-1, at 6-8.) It also purported to engage in foreign currency exchange trading. (*Id.* at 7.)

Yang was investigated by the Wisconsin Department of Financial Institutions (WDFI) for selling unlicensed securities. On July 13, 2020, WDFI entered a Final Order by Consent to Cease and Desist, Revoking Exemptions, and Imposing Disgorgement, Restitution, and Civil Penalties. (Halloin Decl. Ex. 1, ECF

2

24-1.)  The order required Yang and AK Equity Group to pay restitution in the amount of $16,950,776.78 to over 40 investors, including the Lee Parties.  (*Id.* at 9.)  Yang was criminally indicted for her conduct.  *See United States v. Yang*, Case No. 2:25-cr-00097-bhl-scd-1, ECF 1 (E.D. Wis. May 20, 2025).

In 2021, the Lee Parties sued Yang in Wisconsin state court to enforce the restitution ordered by WDFI.  (Halloin Decl. Ex. 5, ECF 26-5.)  The state court entered judgments against Yang in the total amount of $2,443,101.94.  (*Id.* at 2.)

**Debtors' Purchase of the Property**

The Lee Parties assert that Yang used money from other investors in the Capital One account to provide a "loan" to the Debtors, who are Yang's sister-in-law and brother-in-law, in connection with their purchase of residential real property located at 3722 South 18th Street in Sheboygan, Wisconsin (the "Property").  The loan was given through another Yang company called C&K Associates LLC.  On November 26, 2018, Yang transferred $225,000 from the account at Capital One containing the funds from the Lee Parties and other investors to an account in the name of C&K Associates at Associated Bank.  (Halloin Decl. Ex. 15, ECF 26-15, at 2.)  On November 29, 2018, Yang directed that $223,190.65 be wired from the C&K Associates account at Associated Bank to the title company responsible for closing the sale of the Property.  (Halloin Decl. Ex. 16, ECF 26-16.)

The Debtors' purchase of the Property closed on November 30, 2018.  The Debtors provided $1,000 in earnest money before the closing, and they needed $223,190.65 in cash to close the transaction.  (Halloin Decl. Ex. 17, ECF 26-17.)  This entire amount was provided through a loan from C&K Associates.  In

3

exchange, the Debtors signed a promissory note and granted a mortgage on the Property to C&K Associates. (Halloin Decl. Ex. 18, ECF 26-18; Ex. 19, ECF 24-19.) The note has a fixed interest rate of 2% and a 30-year term. (Halloin Decl. Ex. 19, ECF 24-19, at 2.)

### State Court Litigation

On May 24, 2022, the Lee Parties filed a complaint in the Circuit Court for Ozaukee County, Wisconsin, Case No. 2022-CV-162, against Yang, the Debtors, and several other persons that the Lee Parties allege similarly purchased properties using funds that originated from the Capital One account. (Halloin Decl. Ex. 6, ECF 26-6.) The Lee Parties alleged that the defendants were liable as transferees of avoidable transfers under chapter 242 of the Wisconsin statutes. (*Id.*, ¶¶ 24-25.) They requested judgment under Wis. Stat. § 242.04 and attachment of the Property pursuant to Wis. Stat. § 242.07. (*Id.* at 11-12.)

On September 9, 2022, the state court entered an Order for Default Judgment and Judgment and Writ of Attachment Against Mai L Vang and Ue Yang determining that judgment should be entered against the Debtors, jointly and severally, in the total amount of $2,374,290.16. (Halloin Decl. Ex. 8, ECF 26-8.)[1] The Lee Parties did not submit evidence that the judgment was docketed pursuant

---

[1] The state court may have entered an amended order determining that the total debt is $2,445,564.41. A copy of an amended order was attached to a separate complaint the Lee Parties later filed in state court against the Debtors but it is not otherwise in the summary judgment record. (*See* Halloin Decl. Ex. 21, ECF 26-21, at 21 (Ex. B).)

4

to Wis. Stat. § 806.10, though a judgment against Mai L. Vang is listed on the state court docket. (*See* Halloin Decl. Ex. 9, ECF 26-9.)[2]

The state court's September 9, 2022 order also declared that "[e]ffective immediately, the [Property] is attached by a lien in favor of [the Lee Parties] in the amount of $2,374,290.16." (Halloin Decl. Ex. 8, ECF 26-8, at 4.) The order states, "This attachment may be filed with the appropriate Register of Deeds." (*Id.*) The Lee Parties did not present any evidence that they recorded the order with the Register of Deeds for Sheboygan County, Wisconsin, where the Property is located. Nor does it appear that the Lee Parties followed the requirements of chapter 811 of the Wisconsin Statutes to have a writ of attachment issued to the sheriff or to have the sheriff seize the Property. The Lee Parties did, however, docket the money judgment in Sheboygan County. (Halloin Decl. Ex. 35, ECF 26-35.)

The Debtors did not appeal the state court's September 9, 2022 order in Case No. 2022-CV-162.

The Lee Parties separately sued C&K Associates in Ozaukee County, Wisconsin Circuit Court, Case No. 2023-CV-37. (Halloin Decl. Ex. 10, ECF 26-10.) They say one purpose of the lawsuit was to secure the records that were supposed to be maintained for the loan from C&K Associates to the Debtors. (Pls' Proposed Findings of Fact, ECF 25, at ¶¶ 40-41.) On June 27, 2023, the state court entered a Default Judgment and Order to Compel Against Defendant C&K Associates, LLC.

---

[2] The Lee Parties allege in their complaint that "[t]he judgment has been docketed by the judgment clerks in Ozaukee County and Sheboygan County and is an enforceable and secured judgment lien." (Compl., ECF 1, ¶ 19.) The Debtors denied this allegation. (Answer to Compl., ECF 4, ¶ 19.)

(Halloin Decl. Ex. 11, ECF 26-11.)  The order provides, "Any promissory notes made to C&K Associates, LLC, and mortgages received by it, are ordered assigned to the [Lee Parties], including, without limitation, any promissory notes or mortgages relating to . . ." the Property.  (*Id.* at 3.)  The order required all makers of any promissory notes to remit future payments to the Lee Parties.  The parties do not appear to dispute that the Debtors are now required to pay the Lee Parties under the note and mortgage or that the Debtors are now in default because they have not made payments on the note and mortgage since 2022.

The same day they sued C&K Associates, the Lee Parties commenced another case in Sheboygan County, Wisconsin Circuit Court against the Debtors and C&K Associates, Case No. 2023-CV-54.  (Halloin Decl. Ex. 21, ECF 26-21.)  Their complaint alleges that they have a lien on the Property pursuant to Wis. Stat. § 806.15[3] and requests execution on the Property pursuant to Wis. Stat. § 815.05(2).  (*Id.* at 9.)  The Lee Parties also requested that title to the Property be transferred to them pursuant to Wis. Stat. § 816.08.  (*Id.*)

It is unclear what transpired in the nearly 17 months after the filing of the complaint, but on June 19, 2024, the Lee Parties filed a Motion to Execute Against Property.  (Halloin Decl. Ex. 24, ECF 26-24.)  They requested that the state court "issue an order immediately transferring title of the [Property] to the [Lee Parties] pursuant to the Court's authority under Wisconsin Statutes section 816.08[.]"  (*Id.*

---

[3] A lien arises under Wis. Stat. § 806.15 only for judgments "properly entered in the judgment and lien docket."  Wis. Stat. § 806.15(1).

at 4-5.)  The Debtors objected to execution against the Property and to the transferring of title to the Property based on their homestead exemption under Wis. Stat. § 815.20.  (Halloin Decl. Ex. 26, ECF 26-26.)

The state court held a hearing on the motion on August 2, 2024.  (Halloin Decl. Ex. 27, ECF 26-27.)  During the hearing, the state court rejected the Debtors' claimed homestead exemption and ordered that a writ of execution and a writ of assistance be issued.  (*Id.* at 17-21.)  The state court may have issued a writ of assistance on August 2, 2024.  (*See* Compl., ECF 1, ¶ 23; Ex. D, ECF 1-4.)  The document attached to the complaint is not in the summary judgment record, and the Debtors claimed to lack knowledge regarding the document in their answer. (*See* Answer ¶ 23, ECF 4.)  No writ of execution was issued.[4]

### Procedural History

The Debtors filed a voluntary chapter 7 petition on August 3, 2024, Case No. 24-24067.  The Court entered an Order of Discharge on November 13, 2024.

The Lee Parties timely filed this adversary proceeding on November 8, 2024. Their complaint does not include any labeled claims.  However, they allege that the Debtors owe them a debt of $2,445,564.41, and they request that the Court declare that:

---

[4] "Levy of execution on real property is made by endorsing on the execution a description of the property on which the levy was made, and recording the execution, so endorsed, in the office of the register of deeds."  Wis. Stat. § 815.195.  A writ of assistance, in contrast, puts the owner of property into possession of the property through assistance from the sheriff; the writ does not itself create the ownership interest.  Jay E. Grenig, Wis. Pl. & Pr. Forms § 42:10 *Enforcement of Judgments: Writs of Assistance* (5th ed. June 2025 update) (citing *Stanley v. Sullivan*, 71 Wis. 585, 37 N.W. 801 (1888) (discussing nature of writ)).

> (a) the Defendants are not entitled to receive a discharge of their debt under 11 U.S.C. section 523(b) [sic], (b) the Defendants are not entitled to the protection of Wisconsin's homestead exemption, and (c) that the Plaintiffs' judgment is not dischargeable under Bankruptcy Rule 7001(6), as well as for any taxable attorneys' fees and costs incurred in this matter.

(*Id.* at 7.) The Court has assumed that the Lee Parties intended to refer to 11 U.S.C. § 523(a)(2)(A). (*See id.*, ¶ 36.) The first and third requests appear to seek the same relief—a declaration of nondischargeability.

The Lee Parties filed a motion for summary judgment requesting that the Court order three forms of declaratory relief. (ECF 24.) They ask the Court to declare that the Lee Parties are secured creditors and that the Debtors must therefore make an election under 11 U.S.C. § 521, that the debt owed by the Debtors is not dischargeable, and that the Debtors cannot claim a homestead exemption in the Property under Wisconsin law. (*Id.* at 23.)

The Court noted that the Lee Parties' complaint did not seek a declaration that they are secured creditors and that the Lee Parties' objection to the Debtors' homestead exemption appeared to be untimely under Federal Rule of Bankruptcy Procedure 4003. (ECF 30 at 1-2.) The Court allowed the Lee Parties to file a supplemental brief addressing the Court's authority to award the requested relief. (*Id.* at 2.) The Lee Parties then filed a motion for leave to amend their adversary complaint. (ECF 32.) The proposed amended complaint includes three separate claims—one for a declaration that the Lee Parties are secured creditors and that the Debtors must comply with 11 U.S.C. § 521, one for a declaration that the Debtors

8

cannot claim a homestead exemption under Wisconsin law, and one for a declaration of nondischargeability.  (ECF 32-1.)

The Debtors filed their own motion for summary judgment, arguing that the Lee Parties cannot submit evidence sufficient to support the elements of nondischargeability and that the Debtors are entitled to claim a homestead exemption.  (ECF 29, 34.)  The Debtors also objected to the Lee Parties' motion for leave to amend the adversary complaint.  (ECF 44.)

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the order of reference from the district court pursuant to 28 U.S.C. § 157(a).  See 84-1 Order of Reference (E.D. Wis. July 10, 1984) (available at https://www.wieb.uscourts.gov/general-orders) (last visited March 30, 2026). Determination of the dischargeability of a debt and allowance or disallowance of exemptions are core proceedings under 28 U.S.C. § 157(b)(2)(I).  To the extent resolution of the pending motions requires consideration of issues impacted by the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011), the parties have consented to this Court's final adjudication of these issues by their silence.  *See* Fed. R. Bankr. P. 7008, 7012; *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 683 (2015) ("Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express.").

9

## I.    The Lee Parties' Motion for Leave to Amend

In their summary judgment motion the Lee Parties' request that the Court declare that the Lee Parties are secured creditors and that Debtors "must make an election under 11 U.S.C. § 521." (ECF 24 at 23.) The adversary complaint does not seek this relief. (*See* Compl., ECF 1, at 7.) They now seek leave to amend their complaint—after the discovery deadline—to add a new claim seeking this relief, to add allegations related to the two pending claims, and to reformat the claims. (ECF 32, 32-1.)

The Lee Parties' motion is governed by Federal Rule of Civil Procedure 15, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7015. The rule provides that leave of court is required for a party to amend its pleading at this point in the proceeding, and it directs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

"Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002). The Lee Parties' proposed amendment would unduly prejudice the Debtors, and it is futile in any event.

### A.    Amendment Would Prejudice the Debtors.

"Prejudice to the nonmoving party caused by undue delay is a particularly important consideration when assessing a motion under Rule 15(a)(2)." *Allen v.*

*Brown Advisory, LLC*, 41 F.4th 843, 853 (7th Cir. 2022). "[P]rejudice is more likely when an amendment comes late in the litigation and will drive the proceedings in a new direction" or "require significant discovery on new issues." *Id.*; *see also Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) ("Eleventh hour additions are bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants.") (cleaned up). A court has broad discretion to deny a plaintiff leave to amend to add new claims near or after the deadline to complete discovery. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (affirming denial of motion for leave to amend filed three days before the close of fact discovery); *Rodriguez v. City of Green Bay*, No. 20-C-1819, 2022 WL 823948, at *1 (E.D. Wis. Mar. 18, 2022) (striking amended complaint filed after the close of discovery and one day before summary judgment motions were due).

The Lee Parties' motion for leave to amend their complaint was filed after the close of discovery and after the deadline to file motions for summary judgment. At all times during discovery and in preparing to file a motion for summary judgment, the pending claims related to the Debtors' homestead exemption and the Lee Parties' request for a declaration of nondischargeability with respect to the money judgment entered by the state court in Case No. 2022-CV-162. The Debtors were not put on notice that they would need to defend against a claim related to security interests in the Property.

The Lee Parties offer no explanation for their failure to include the new claims in their original pleading. *See Sanders v. Venture Stores, Inc.*, 56 F.3d 771,

11

775 (7th Cir. 1995) (affirming denial of leave to amend after close of discovery and summary judgment briefing where plaintiffs "offered no explanation whatsoever for the delay"). Instead, they say that the dispute as to whether the Lee Parties are secured creditors "is closely intertwined with [the Lee Parties'] original objection to discharge" and that "the Court will necessarily need to make a finding regarding what type of creditor [the Lee Parties] are" as part of the nondischargeability claim. (ECF 33 at 5-6.) The Lee Parties do not explain this assertion.

A claim under § 523(a)(2)(A) requires the Court to determine only whether the debt at issue is nondischargeable. Whether the debt is secured is an entirely different matter. Liens pass through bankruptcy unaffected, regardless of whether the underlying personal liability is discharged. *In re Pajian*, 785 F.3d 1161, 1163 (7th Cir. 2015) ("[A] secured creditor who fails to [file a proof of claim] can still enforce its lien through a foreclosure action, even after the debtor receives a discharge."); *In re Penrod*, 50 F.3d 459, 461 (7th Cir. 1995) (noting the presumption that "liens pass through bankruptcy unaffected"). This includes judicial liens, which survive bankruptcy unaffected to the extent they do not impair a debtor's homestead exemption. *In re Morosetti*, No. 25-20897-GLT, 2026 WL 432259, at *3 (Bankr. W.D. Pa. Feb. 13, 2026) ("Only the portion of a judicial lien that interferes with the debtor's exemption is avoidable. Any portion that does not impair the exemption survives unaffected.") (citing *East Cambridge Savings Bank v. Silveira (ln re Silveira)*, 141 F.3d 34, 36-38 (1st Cir. 1998), and *Tedeschi v. Falvo (In re Falvo)*, 227 B.R. 662, 666 (6th Cir. B.A.P. 1998)); *see also In re Littig*, No. 19-70152,

12

2019 WL 3268792, at \*3 (Bankr. C.D. Ill. July 19, 2019) ("There is no fair reading of the statute [11 U.S.C. § 522(f)] that would support avoiding a judicial lien beyond the amount necessary to protect a debtor's exemption.").

The parties mention 11 U.S.C. § 522(f) in their briefing. (ECF 42 at 3; ECF 48 at 9-10.) That section allows a debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption" if the lien is a judicial lien. 11 U.S.C. § 522(f)(1)(A). Debtors may exercise this right to avoid a judicial lien regardless of whether the underlying debt is nondischargeable. *In re Hulvey*, 102 B.R. 703, 704 (Bankr. C.D. Ill. 1988) ("The Plaintiffs contend, however, that the Defendant should not be allowed to avoid the lien because this debt is nondischargeable. This Court does not agree."); *see also In re Ash*, 166 B.R. 202, 204 (Bankr. D. Conn. 1994) ("A substantial number of courts considering this issue agree that a debtor's avoidance power is not conditioned upon whether the underlying debt is dischargeable[.]") (collecting cases). The Debtors have not brought a motion to exercise their rights under § 522(f). Unless and until they do, they should not have to defend a claim regarding the Lee Parties' secured status.

It may be that the Lee Parties think their secured status is relevant to their pending claim for a declaration that the Debtors cannot claim a homestead exemption in the Property. Perhaps they are right. But, as explained herein, the Court is granting summary judgment to the Debtors on this claim because it is untimely. If the only reason to consider the secured status of the Lee Parties' claim is in relation to the Debtors' homestead exemption, then the Debtors would be

prejudiced by having to defend against that claim if there is no remaining claim regarding the homestead exemption.

Upon disposition of the parties' cross motions for summary judgment, this case will be ready to proceed to trial. If the Court allows the amendment, discovery may need to be reopened[5], and the parties could file another round of summary judgment motions on the added claim.[6] The Debtors and the public have an interest in a speedy resolution of this case. *Perrian*, 958 F.2d at 195 ("The burden to the judicial system can justify a denial of a motion to amend even if the amendment would cause no hardship at all to the opposing party" because a late amendment "defeat[s] the public's interest in speedy resolution of legal disputes.") (internal quotation marks omitted). The Debtors will be prejudiced by the late amendment, so the Court will deny leave to amend.

### B.     The Amendment Would Be Futile.

It is appropriate to deny a plaintiff leave to amend a complaint where the amendment would be futile. *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir. 1993) ("[T]he court should not allow the plaintiff to amend his complaint when to do so would be futile."). "[A]n amendment may be futile when it fails to state a valid

---

[5] The Lee Parties say that *they* do not want additional discovery (*see* Pls' Combined Reply Brief, ECF 48, at 23), but the Debtors may want additional discovery regarding the scope of the Lee Parties' alleged security interest before the Court were to make a binding declaration.

[6] The Lee Parties seem to suggest that the Court should permit them to amend their complaint and then grant summary judgment in their favor on the added claim without allowing the Debtors to file a responsive motion or pleading or to conduct discovery on the new claim. The Lee Parties offer no legal authority for the Court's ability to grant immediate summary judgment in that fashion. *See In re KJK Const. Co.*, 414 B.R. 416, 426 (Bankr. N.D. Ill. 2009) (noting that if a motion for summary judgment is made before an answer to the complaint is filed, courts are reluctant to grant summary judgment unless it is very clear that an answer will not raise any significant issues of fact).

theory of liability . . . or could not withstand a motion to dismiss." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992).

In their proposed new claim, the Lee Parties ask the Court to declare that they have a security interest in the Property and that the Debtors are required to make an election with respect to the secured claim under 11 U.S.C. § 521(a). The Court lacks jurisdiction to make a declaration as to the first part, and the Court cannot provide any relief to the Lee Parties on the second part. Therefore, the amendment would be futile.

As to their request for a declaration that they have a security interest in the Property, the Lee Parties have two theories. The first is that they are secured based on the "writ of attachment" issued by the Ozaukee County Circuit Court and docketed in Sheboygan County. (Pls' Mot. for Summ. J., ECF 24, at 13-14.) The problem with this theory is that no writ of attachment was ever issued, at least not based on the allegations in the amended complaint or the information in the summary judgment record. Section 242.07(1)(b) of the Wisconsin Statutes provides that a creditor seeking relief under chapter 242 may obtain, among other remedies, "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee if available under chs. 810 to 813 or other applicable law." Neither the state court order nor the Lee Parties' submissions in this court identify any applicable law other than chapter 811. Therefore, the Court has assumed that the Lee Parties were required to follow the procedures in chapter 811 of the Wisconsin Statutes in seeking to enforce the attachment ordered by the state court.

15

The Lee Parties do not allege in their proposed amended complaint that a state court ever actually issued a writ of attachment to the Sheriff of Sheboygan County consistent with chapter 811 of the Wisconsin Statutes, and no such writ was attached to the amended complaint or included with the summary judgment record. *See* Wis. Stat. § 811.02 (a writ of attachment "shall be directed to the sheriff of some county in which the property of the defendant is supposed to be, and shall require the sheriff to attach all the property of the defendant within the county or so much thereof as may be sufficient to satisfy the plaintiff's demand, together with costs and expenses"). Nor do the Lee Parties allege that they filed the order or otherwise recorded a lien with the Register of Deeds for Sheboygan County consistent with the order. The Lee Parties do, however, allege that they docketed the Ozaukee County money judgment with Sheboygan County, which may have given them a judgment lien on the Property. *See* Wis. Stat. §§ 806.10, 806.13, 806.15. The Court need not decide the nature and scope of that lien because the Lee Parties have all the relief they need on their second theory.

The Lee Parties' second theory is that they are secured by virtue of the mortgage that the Debtors granted to C&K Associates. (Pls' Mot. for Summ. J., ECF 24, at 15.) In Case No. 2023-CV-37, the Ozaukee County Circuit Court ordered that "[a]ny promissory notes made to C&K Associates, LLC, and mortgages received by it, are ordered assigned to the [Lee Parties], including, without limitation, any

16

promissory notes relating to . . ." the Property. (Halloin Decl. Ex. 11, ECF 26-11.)[7] The Debtors agree that the mortgage granted to C&K Associates is "legitimate," that they want to pay the mortgage, and that they have attempted to pay the Lee Parties pursuant to their payment obligations under the mortgage. (Witkowski Decl. Ex. 5, ECF 35-5, ¶¶ 16-17, 19-20; Witkowski Decl. Ex. 6, ECF 35-6, ¶¶ 16-17, 19-20.)

Thus, the Debtors agree that the Lee Parties have a security interest in the Property. There is no live dispute between the parties to adjudicate through a request for declaratory relief. *See Powell v. McCormack*, 395 U.S. 486, 517-18 (1969) ("The availability of declaratory relief depends on whether there is a live dispute between the parties[.]"). For the same reason, the Court does not have subject matter jurisdiction to adjudicate the Lee Parties' alternative request that the Court declare that their liens pass through bankruptcy unaffected. (*See* Proposed Am. Compl., ECF 32-1 at 15.)[8]

---

[7] It is unclear whether the Lee Parties were required to record the order to assign the mortgage, which they do not appear to have done. "[U]nder the doctrine of equitable assignment a mortgage is automatically transferred by operation of law when the note is transferred." *Dow Fam., LLC v. PHH Mortg. Corp.*, 2014 WI 56, ¶ 40, 354 Wis. 2d 796, 815, 848 N.W.2d 728, 737. If the note to C&K was transferred to the Lee Parties, then an assignment or other interest need not be recorded. *See id.*, ¶ 47 ("[A] mortgage automatically passes by operation of law upon the assignment of a mortgage note[.]"). It may be that the order was sufficient to assign the note so that the mortgage followed the note, but that is not a matter for this Court to decide.

[8] The Lee Parties also complain that the Debtors' schedules include C&K Associates as the secured creditor for the mortgage, rather than the Lee Parties. (*See* Pls' Resp. to Defs' Mot. for Summ. J., ECF 39 at 10-11.) The Lee Parties do not explain how this harms them or what relief that entitles them to. The Debtors acknowledged the mortgage debt, and they did schedule the Lee Parties as creditors.

The Lee Parties also want the Court to require that the Debtors make an election under 11 U.S.C. § 521(a). That section requires a chapter 7 debtor to file a statement of intention within 30 days after the petition date with respect to debts that are secured by property of the estate electing to reaffirm, redeem, or surrender the property, and to perform that intention within 30 days after the first date set for the meeting of creditors under § 341(a). 11 U.S.C. § 521(a)(2); *see also In re Edwards*, 901 F.2d 1383, 1387 (7th Cir. 1990) ("[Section 521] requires a debtor to choose between the reaffirmation, redemption or surrender of property abandoned from the estate or exempted from discharge.").

The Debtors' Statement of Intention did not include an election for the C&K Associates mortgage on the Property *(see* Case No. 24-24067, ECF 1, at 46), and they say they have no objection to a declaration that they are required to make an election (Defs' Resp. to Pls' Mot. for Summ. J., ECF 42, at 3). The Court could, perhaps, require the Debtors to file an untimely statement of intention under § 521(a), but to what end? Such a declaration would not afford any relief to the parties because the Court cannot require the debtors to perform any stated intention.

The Debtors can no longer enter into an enforceable reaffirmation agreement because an order of discharge was already entered in the main bankruptcy case. *See* 11 U.S.C. § 524(c)(1) (providing that a reaffirmation agreement is enforceable only if "such agreement was made before the granting of the discharge"). That leaves redemption or surrender. The Court cannot require the debtors to redeem

18

the Property by paying the Lee Parties; redemption must be voluntary and is subject to the Debtors' ability to pay. *See* 11 U.S.C. § 722. Redemption may not be available to the Debtors at this point in any event. Redemption requires that the debt be dischargeable (the Lee Parties claim their debt is not dischargeable) and that the property at issue is exempted (the Lee Parties claim it is not) or that the property is no longer property of the estate (the Property is still in the estate). Nor can the Court compel the Debtors to surrender the Property, at least not in a way that would offer relief to the Lee Parties. At this point, the Property is still part of the bankruptcy estate and will be until the case is closed or the trustee or a party in interest files an appropriate notice or motion. *See* 11 U.S.C. § 554; Fed. R. Bankr. P. 6007. Once the Property is no longer part of the bankruptcy estate, the Lee Parties will need to follow state law to obtain possession of the Property.

For personal property, the consequence of a debtor's failure to file a timely statement of intention under § 521(a) or to perform that intention timely is to remove the property from the bankruptcy estate and grant relief from the § 362(a) stay by operation of law. *See* 11 U.S.C. § 362(h). Congress provided no such mechanism for real property. So a secured creditor with respect to real property must seek relief from the § 362(a) stay and abandonment under § 554 to enforce its lien. The Lee Parties do not explain why they need an untimely election under § 521(a) before they can take such action to enforce the mortgage.

Because it is untimely and seeks relief the Court cannot grant, the Court will deny the Lee Parties' motion for leave to amend the complaint.

19

## II.    Motions for Summary Judgment

Summary judgment is appropriate if the pleadings and affidavits on file show there is no genuine dispute as to any material fact and the moving party can establish it is entitled to judgment as a matter of law.  *See* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56.  An issue of material fact is a question that must be answered to determine the rights of the parties under substantive law and that can properly be resolved only "by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The movant may meet his burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citations omitted).  If the moving party meets his burden, the burden shifts to the nonmoving party to show there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### A.    Declaration as to Homestead Exemption

The Lee Parties' complaint includes a request that the Court declare that "the Defendants are not entitled to the protection of Wisconsin's homestead exemption."  (Compl., ECF 1, at 7.)  Both parties now seek summary judgment on that claim.  The Court will grant summary judgment to the Debtors on the Lee Parties' affirmative claim for a declaration because the claim is untimely.

20

In the main bankruptcy case, the Debtors claimed a homestead exemption in the Property in the amount of $140,000 pursuant to Wis. Stat. § 815.20. Case No. 24-24067, ECF 1 at 16. Though Wisconsin law allows each debtor to claim up to $75,000 for a homestead exemption, allowing married couples like the Debtors to claim up to $150,000, it appears that the exemption claimed by the Debtors is the difference between the balance on the mortgage to C&K Associates and the value of the Property.

Pursuant to Bankruptcy Rule 4003, "a party in interest may file an objection to a claimed exemption within 30 days after . . . the conclusion of the § 341 meeting of creditors." Fed. R. Bankr. P. 4003(b)(1).[9] The court may extend the time to file an objection, but only if the party in interest files a motion before the time to object expires. *Id.* Failure to file a written objection to a debtor's claimed exemption, or a motion to extend the deadline, is fatal to an untimely objection. *In re Kazi*, 985 F.2d 318, 322 (7th Cir. 1993) ("[O]nce the 30-day period to object expires, a debtor's claimed exemption cannot be challenged regardless whether it has a basis in law."). This is so even where the party in interest initially believes the property in which the exemption is claimed is not part of the bankruptcy estate. *Id.*

The chapter 7 trustee concluded the meeting of creditors on September 9, 2024 and filed a report of no distribution on September 11, 2024. Case No. 24-

---

[9] The rule extends this deadline if the debtor files a supplement to the list of exemptions or an amendment to other schedules that is relevant to exemption at issue. *See* Fed. R. Bankr. P. 4003(b)(1); *see also In re Kazi*, 985 F.2d 318, 323 (7th Cir. 1993) (agreeing that "the objection may go only to those exemptions affected by [the amended schedules]" and that "[t]he filing of an amended schedule does not reopen the time to object to the original exemptions"). The Debtors did not file any amendments to their list of exemptions or supplements to their schedules.

24067, ECF 7, 13.  Pursuant to Bankruptcy Rule 4003(b), the deadline for the Lee

Parties to object to the Debtors' claimed homestead exemption was October 9, 2024.

The Lee Parties did not file their adversary complaint until November 8, 2024, well

after the deadline.[10]  Their claim for affirmative relief is untimely, and the Court

will grant summary judgment to the Debtors dismissing that claim.[11]

In an attempt to save their claim for a declaration as to the Debtors'

homestead exemption, the Lee Parties say they are merely responding to the

Debtors' invocation of the exemption as an affirmative defense to the Lee Parties'

nondischargeability claim.  (*See* ECF 33 at 6-7 (citing ECF 4 at 7).)  "An affirmative

defense limits or excuses a defendant's liability even if the plaintiff establishes a

*prima facie* case."  *Bell v. Taylor*, 827 F.3d 699, 704-05 (7th Cir. 2016) (internal

quotation marks omitted).  A plaintiff does not have an affirmative claim against a

defendant based on an affirmative defense, so that does not save the Lee Parties'

claim for a declaration denying the Debtors' homestead exemption.

To the extent the Lee Parties seek summary judgment as to an affirmative

defense (as opposed to an affirmative claim for a declaration), the Court will deny

that motion.  In their answer to the complaint, the Debtors included an affirmative

---

[10] Moreover, it is not clear that an objection to a claim of exemption can even be brought in an adversary proceeding.  *See Cardservice Int'l, Inc. v. Inman (In re Inman)*, 260 B.R. 233, 241 (Bankr. M.D. Fla. 2000) ("Such an objection [to the debtor's exemptions in household property] should have been brought in the main case, not in this Proceeding.").

[11] The Lee Parties repeatedly complain that the Debtors filed bankruptcy one day after the state court in Sheboygan County held that the Debtors could not invoke the homestead exemption in response to the Lee Parties' enforcement efforts against the Property.  (ECF 24 at 20-21, ECF 33 at 7; ECF 39 at 9-10; ECF 48 at 9-12.)  If the Lee Parties wanted to enforce that ruling to preclude the Debtors from claiming a homestead exemption in this case, they should have filed a timely objection to the exemption.  They did not.

defense that the Lee Parties' "request for relief fails because the Debtor/Defendants' home is their homestead, with equity at or below \$150,000 and therefore exempt and out of reach of creditors." (ECF 4, ¶ 47.) Because the Lee Parties did not plead separate claims for relief in their adversary complaint, it is impossible to tell whether this affirmative defense was invoked in response to the Lee Parties' request for a declaration of nondischargeability under § 523(a)(2)(A) or in response to the request for a declaration related to the Debtors' homestead exemption. In any event, the Lee Parties' motion for summary judgment does not specifically request that the Court grant summary judgment precluding the Debtors from raising the affirmative defense in paragraph 47 of their answer (or any other affirmative defense). (*See generally* ECF 24.) None of the Debtors' briefs mention an affirmative defense, either, suggesting that they did not understand the Lee Parties to be seeking summary judgment on their affirmative defense. (*See generally* ECF 34, 39, 50.) Therefore, the Court will deny summary judgment because the Debtors did not have sufficient notice of the Lee Parties' motion on this issue.

The Debtors are cautioned that they may raise at trial only affirmative defenses that limit or excuse their liability as to nondischargeability under § 523(a)(2)(A) if the Lee Parties establish a *prima facie* case. Under Wisconsin law, the holder of a money judgment (which the Lee Parties purport to be) may enforce that judgment through execution on a debtor's property. *See* Wis. Stat. ch. 815. Certain property is exempt from execution by a creditor, including \$75,000 in a

debtor's homestead.  Wis. Stat. § 815.20.  The Lee Parties' ability to enforce their

judgment through execution on the Property does not seem to be relevant to

whether the debt claimed by the Lee Parties is nondischargeable under

§ 523(a)(2)(A).  The Debtors' homestead exemption may affect the property that the

Lee Parties can look to for satisfaction of their claim[12], but that is a matter separate

from whether the debt itself is nondischargeable.

### B.        Nondischargeability Under § 523(a)(2)(A)

The Lee Parties seek a declaration that a debt owed to them is excepted from

the Debtors' discharge under 11 U.S.C. § 523(a)(2)(A).  That section excepts debts

"obtained by . . . false pretenses, a false representation, or actual fraud . . . ."  11

U.S.C. § 523(a)(2)(A).  The creditor must prove each element of a

nondischargeability claim by a preponderance of the evidence.  *Grogan v. Garner*,

498 U.S. 279, 291 (1991).  "[E]xceptions to discharge are to be [construed] strictly

against a creditor and liberally in favor of the debtor."  *Goldberg Securities, Inc. v.*

*Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992).

The term "actual fraud" as used in § 523(a)(2)(A) "denotes any fraud that

involves moral turpitude or intentional wrong."  *Husky Int'l Elecs., Inc. v. Ritz*, 578

U.S. 355, 360 (2016) (cleaned up); *see also In re McGill*, No. 22-21547-GMH, 2023

WL 7136151, at *6 (Bankr. E.D. Wis. Oct. 30, 2023) ("The essence of any claim

under § 523(a)(2)(A) is that the debtor, whether by word or deed, somehow cheated

---

[12] A declaration of nondischargeability under § 523(a)(2)(A) does not affect the parties' rights with respect to any judgment lien the Lee Parties may have.  *Pajian*, 785 F.3d at 1163.  The lien survives bankruptcy unaffected to the extent it is not avoided, and the Debtors may still exercise their rights under § 522(f) in the main case to seek avoidance of any judgment lien.  *Ash*, 166 B.R. at 204.

24

the creditor, which requires some type of 'moral turpitude' or 'intent to deceive' on the part of the debtor, rather than simply not abiding by his promises.") (cleaned up). Thus, "actual fraud" includes debts incurred through "fraudulent conveyance schemes, even when those schemes do not involve a false representation." *Husky*, 578 U.S. at 366. "[T]he recipient of the transfer—who, with the requisite intent, also commits fraud—can obtain assets by his or her participation in the fraud. If that recipient later files for bankruptcy, any debts traceable to the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A)." *Id.* at 365 (cleaned up).

A bankruptcy debtor can be liable as a transferee of fraudulently conveyed property where the debtor participated in a scheme to hide an asset from the creditor. *See McClellan v. Cantrell*, 217 F.3d 890, 895 (7th Cir. 2000). In *McClellan*, the creditor sold his ice-making machinery to the debtor's brother for $200,000, payable to the creditor in installments. *Id.* at 892. The brother defaulted, and the creditor commenced litigation to seek return of the machinery and collection of the remaining balance of the debt. *Id.* The debtor's brother "sold" the machinery to the debtor for $10. *Id.* The debtor then sold the machinery for $160,000 and refused to disclose where the sale proceeds went. *Id.* The Seventh Circuit held that the debtor's liability for fraudulent conveyance could be rendered nondischargeable if the debtor participated in the fraud and had intent to assist her brother in transferring assets to evade the creditor. *Id.* at 893-94. The court noted that a transfer that is merely constructively fraudulent, where the debtor did not have knowledge of or intent to participate in a fraudulent scheme to hinder the

25

creditor, may be dischargeable.  *Id.* at 894 ("The fraud exception to the discyhargeability of debts in bankruptcy does not reach constructive frauds, only actual ones[.]").

The record includes some evidence of the Debtors' intent, but there are genuine issues of material fact precluding summary judgment.

### 1.     *The State Court Order Does Not Establish Intent to Defraud.*

To prevail on their nondischargeability claim, the Lee Parties must prove that the Debtors are liable for an actual fraudulent transfer, as opposed to a constructive fraudulent transfer.  The Lee Parties rely heavily on the September 9, 2022 order entered in Ozaukee County Case No. 2022-CV-162.  (Halloin Decl. Ex. 8, ECF 26-8.)  They say, for example, that "[t]he Wisconsin Circuit Court already entered a final order that [the Debtors] were liable for the damages caused by Kay Yang's fraud."  (Pls' Combined Reply Brief, ECF 48, at 21.)  The order cannot bear the weight the Lee Parties place on it.

In the September 9 order, the state court stated that "[t]his matter relates to fraudulent transfers from Defendant debtor Kay Yang to the other named Defendants in this action."  (Halloin Decl. Ex. 8, ECF 26-8, at 2.)  The court found the Debtors to be in default and concluded that "[t]he allegations of the Complaint are deemed admitted."  (*Id.* at 4.)  The court then entered judgment against the Debtors in the amount of $2,374,290.16.  (*Id.*)  The Court's order does not specifically state the basis of the Debtors' liability, other than a reference to fraudulent transfers.

Even assuming we can look to the Lee Parties' state court complaint to determine the source of the Debtors' liability, that does not help the Lee Parties. As relevant here, the Lee Parties alleged: "Plaintiffs believe that these transfers [to Debtors for purchase of the Property] were done with an intent to hinder, delay or defraud the Plaintiffs' efforts to collect a present or future judgment against Ms. Yang." (Halloin Decl. Ex. 6, ECF 26-6, ¶ 23.) They also allege that, "Plaintiffs believe each of the above transfers to be a violation of Wisconsin Statutes Chapter 242." (*Id.* ¶ 25.) The Lee Parties "request[ed] judgment under Wisconsin Statutes sections 242.04 and 242.07." (*Id.* at 12.) The September 9 order provides that these allegations were deemed admitted by the Debtors. The most that the Debtors admitted was that the Lee Parties *believe* the transfer to them was done with intent to hinder, delay or defraud the Lee Parties; the Debtors did not admit the existence of any intent to hinder, delay or defraud.

Moreover, the complaint alleged that the transfer was a violation of chapter 242 of the Wisconsin Statutes and requested relief under section 242.04. That section includes two distinct causes of action: section 242.04(1)(a) relates to actual fraudulent transfers as to present or future creditors, and section 242.04(1)(b) relates to constructive fraudulent transfers as to present or future creditors. Wis. Stat. § 242.04(1). The Lee Parties did not include a specific request for relief under either subsection, and the state court did not grant relief under either subsection. So the Debtors' liability for fraudulent transfer under the September 9 order could be based on constructive fraudulent transfer or actual fraudulent transfer. If the

former, their debt to the Lee Parties is dischargeable under *McClellan*. 217 F.3d at 894 ("The fraud exception to the dischargeability of debts in bankruptcy does not reach constructive frauds, only actual ones[.]"). The Lee Parties cannot rely solely on the state court order to establish fraudulent intent. They must prove here that the transfer was an actual fraudulent transfer.

### 2. There Are Material Factual Disputes Regarding Intent.

The key element of a nondischargeability claim for actual fraud is the scienter requirement: the plaintiff must prove fraudulent intent. *See Husky*, 578 U.S. at 360 ("[A]nything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'"). Wrongful intent can be, but rarely is, proven with direct evidence. Intent can also be proven through circumstantial evidence. State statutes usually include a list of "badges of fraud" that can be helpful in determining whether a fraudulent transfer is actually fraudulent, as opposed to constructively fraudulent, and federal courts considering whether intent is proven for purposes of a claim under § 523(a)(2)(A) often look to these badges of fraud. *See, e.g., In re Wigley*, 15 F.4th 1208, 1212 n.4 (8th Cir. 2021) ("We reject Barbara's argument that the bankruptcy court erred in considering the badges of fraud set forth in Minn. Stat. § 513.44(b)."); *In re Kedia*, 607 B.R. 101, 110 (Bankr. E.D.N.Y. 2019) ("Actual fraud can be shown by the presence of multiple 'badges of fraud[.]'") (internal quotation marks omitted).

As with the intent element in other causes of action, intent under § 523(a)(2)(A) is a question of fact rarely appropriate for disposition on summary judgment. *See, e.g., Staren v. Am. Nat. Bank & Tr. Co. of Chicago*, 529 F.2d 1257,

1261 (7th Cir. 1976) ("[Q]uestions of motivation or intent are particularly inappropriate for summary judgment."); *In re Salgado*, 588 B.R. 209, 214 (Bankr. N.D. Ill. 2018) ("Summary judgment will almost never be available when fraudulent intent is a part of the cause of action. This is because intent is a factual issue that is ordinarily a subjective inquiry, making the Debtor's testimony and credibility germane to this determination."). Summary judgment in favor of the creditor is appropriate only in "exceptional" cases where a debtor's denial of knowledge is "utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). This is not one of those exceptional cases.

Before moving on to the evidence on intent, the Court pauses to note an issue of law that was not well-briefed by the parties, which is ***whose*** intent is relevant when determining whether a debt for an actual fraudulent transfer is nondischargeable under § 523(a)(2)(A). The Supreme Court in *Husky* and the Seventh Circuit in *McClellan* held that a debt based on a fraudulent transfer can be declared nondischargeable if the debtor as transferee had knowledge of and intent to participate in the fraudulent transfer. *Husky*, 578 U.S. at 365 (noting that a transferor does not "obtain" debts by fraudulent conveyance, but that "the recipient of the transfer—who, with the requisite intent, also commits fraud—can 'obtain' assets 'by' his or her participation in the fraud"); *McClellan*, 217 F.3d at 894 ("[I]f though the debtor's brother intended to thwart McClellan and was thus committing actual fraud, his sister was innocent—if she had no intention of hindering any

creditor—the debt that McClellan is seeking to collect from her would not have been obtained *by her* by actual fraud.").  A more recent Supreme Court case holds that a debt can be nondischargeable even where the debtor herself did not have fraudulent intent, but that case did not involve a fraudulent transfer.  *See Bartenwerfer v. Buckley*, 598 U.S. 69 (2023).

In *Bartenwerfer*, a husband and wife remodeled and sold a house as business partners.  598 U.S. at 72.  The husband did most of the work during the process, and the wife was largely uninvolved.  *Id.*  After the sale, the buyer discovered several undisclosed defects.  *Id.*  The buyer sued the couple in state court, alleging various claims for breach of contract, negligence, and nondisclosure, and the court entered judgment against both of them.  *Id.* at 72-73.

The couple filed bankruptcy, and the buyer sought to have the judgment debt declared nondischargeable under 11 U.S.C. § 523(a)(2)(A).  *Id.* at 73.  At issue in the case was whether § 523(a)(2)(A) excepts from discharge only debts for fraud committed by the debtor herself, as the wife argued, or whether the statute also excepts debts for money obtained by fraud, even if the debtor was not the fraudster, as argued by the buyer.  The Supreme Court agreed with the buyer.  *Id.* at 74-79. The Court held that, "[w]ritten in the passive voice, § 523(a)(2)(A) turns on how the money was obtained, not who committed fraud to obtain it." *Id.* at 72.  Because the money owed to the buyer was obtained by fraud (*i.e.*, the husband's fraud), the debt owed by the wife was nondischargeable under § 523(a)(2)(A) because she was liable for the same debt under state law.  *Id.*

30

The Lee Parties point to *Bartenwerfer* in support of an argument that they need not prove the Debtors' intent, and that it is sufficient for them to prove Kay Yang's intent to defraud the Lee Parties. (*See* Pls' Combined Reply Brief, ECF 48, at 21 ("[B]ecause the judgment [in Case No. 2022-CV-162] arises from funds obtained by Kay Yang's fraud and then passed to/used by [the Debtors], it is a debt for money obtained by fraud.").) But the Lee Parties do not allege that the Debtors are liable for Kay Yang's initial fraud. Rather, the Lee Parties allege that the Debtors are liable for a debt for money obtained through a fraudulent transfer under chapter 242 of the Wisconsin Statutes, an entirely separate, statutory cause of action distinct from Yang's debt to the Lee Parties for fraud.[13] (*See* Halloin Decl. Ex. 8, ECF 26-8.)

The focus, then, is on the allegedly fraudulent transfer to the Debtors, not on Yang's underlying fraud in causing the Lee Parties to part with their money initially. In *Husky*, the Supreme Court emphasized that the basis for the transferor's underlying debt to the creditor is not relevant to nondischargeability based on a fraudulent transfer. 578 U.S. at 365 (rejecting dissent's view that a claim under § 523(a)(2)(A) must "result from fraud ***at the inception of a credit transaction***") (emphasis added); *see also McClellan*, 217 F.3d at 894 ("[T]he law of fraudulent conveyance is merely a method of facilitating the collection of a previous

---

[13] Wisconsin's fraudulent transfer law in chapter 242 is a creditor-protection statute. *Badger State Bank v. Taylor*, 2004 WI 128, ¶ 41, 276 Wis. 2d 312, 330, 688 N.W.2d 439, 448. It provides remedies to creditors so they are not deprived of assets that would otherwise be available to satisfy debts when the debtor becomes insolvent or is about to become insolvent. *Id.* ¶ 42.

31

debt that ***need not itself have been created by a fraud.***") (emphasis added).

Thus *Bartenwerfer* does not help the Lee Parties in the way they think, because proof of Yang's intent to defraud the Lee Parties by causing them to part with their money between January and May 2019 is different from her intent to hinder, delay or defraud her future creditors when she transferred money to the Debtors to purchase the Property in November 2018.

There is an outstanding question as to whether Kay Yang's intent is relevant to the dischargeability of the Debtors' liability for an actual fraudulent transfer, or whether only the Debtors' intent matters. The majority opinion in *Bartenwerfer* suggests that it may not. 598 U.S. at 72 ("Written in the passive voice, § 523(a)(2)(A) turns on how the money was obtained, not who committed fraud to obtain it."). The concurrence suggests that liability may be limited to debtors who have a partnership or agency relationship with the person who committed the fraud. *Id.* at 84 (Sotomayor, J., concurring) ("The Court here does not confront a situation involving fraud by a person bearing no agency or partnership relationship to the debtor."). At least one court has held that *Bartenwerfer* does not extend to innocent transferees of fraudulent transfers even if the transferor had fraudulent intent. *See In re Vulaj*, 651 B.R. 310, 315 (Bankr. S.D. Cal. 2023). The Lee Parties' discussion of *Bartenwerfer* does not address the issue of the innocent transferee[14]

---

[14] A hypothetical with less complex facts than this case highlights the issue. Suppose P (the primary debtor) owes a debt to C (the creditor) for $100,000. In an attempt to shield assets from C, P transfers $10,000 to D (the debtor) in the form of a gift and without consideration. D is unaware of C's claim against P or that the $10,000 could have or should have been used to pay C. D is nevertheless liable as a transferee under Wis. Stat. § 242.04(1)(a) because she received an actual

(their discussion focuses on their incorrect argument that the Debtors are liable for Yang's underlying fraud), and the Debtors had no opportunity to discuss *Bartenwerfer*'s applicability here because the Lee Parties did not cite the case until their reply brief.

The Court need not decide the issue at this juncture because the summary judgment record does not include sufficient facts for the Court to conclude that this could be a case of a fraudster transferor and innocent transferee. The Lee Parties make no argument and present no facts that Yang (or A&K Equity or C&K Associates) had an intent to hinder, delay, or defraud her creditors when she transferred funds to the Debtors to purchase the Property.

The innocent transferee legal issue may not matter if the Lee Parties can present sufficient evidence to prove that the Debtors had an intent to defraud. But the Lee Parties' briefs are high on rhetoric and short on facts in this regard. The Lee Parties rely primarily on the circumstances and terms of the mortgage loan the Debtors received from C&K Associates. (ECF 24 at 18.) *First*, the Lee Parties assert that the Debtors did not fill out a loan application or go through any sort of credit check or underwriting process. This fact is not undisputed; the Debtors deny that they did not fill out "traditional loan documents." (*See* Defs' Resp. to Pls' PFOF, ECF 43, ¶ 68.) *Second*, the Debtors provided only the $1,000 escrow

---

fraudulent transfer, and a state court enters judgment in favor of C and against D under Wis. Stat. § 242.08(2). D already spent the money she received from P and does not have $10,000 to pay the judgment. D files bankruptcy. Is D's debt to C nondischargeable under § 523(a)(2)(A) if C can prove that D obtained the $10,000 through P's actual fraudulent transfer, even if D lacked any intent to defraud C? That question may not necessarily be answered by *Bartenwerfer*.

payment to purchase the Property, and C&K Associates did not require them to tender a further down payment for the mortgage loan, which is unusual for a typical mortgage loan transaction. (*See* Halloin Decl. Ex. 17, ECF 26-17.) *Third*, the loan had a 2% interest rate, which was well below the market rate at the time. (Defs' Resp. to Pls' PFOF, ECF 43, ¶¶ 66-67.) *Fourth*, the Debtors made irregular payments and eventually stopped making payments, yet no foreclosure action or other collection action was initiated against them. The Debtors dispute that this gave them knowledge of Yang's fraud; they say they made payments as directed by Yang. (Defs' Resp. to Pls' PFOF, ECF 43, ¶¶ 70-75.)[15] *Fifth*, the Lee Parties say that "[t]he financer of the purchase was not a licensed or registered vendor," citing facts related to A&K Equity, not C&K Associates. (Pls' Mot. for Summ. J., ECF 24, at 18 (citing Pls' PFOF, ECF 25, ¶¶ 9-10).) Presumably, the Lee Parties rely on the transfer of funds from the A&K Equity account at Capital One to the C&K Associates account. (*See* Halloin Decl. Ex. 15, ECF 26-15.) The Debtors say they don't know anything about that. (Defs' Resp. to Pls' PFOF, ECF 43, ¶ 61.)

For their part, the Debtors say that they were not investors in Yang's fraudulent investment scheme. They say they were made aware that Yang was operating C&K Associates and could provide a mortgage loan, "regardless of

---

[15] This fact may not support a finding of fraudulent intent because the events happened after the Debtors received the allegedly fraudulent transfer from Yang's company. To be nondischargeable under § 523(a)(2)(A), the money must have been "obtained by" fraud, meaning that relevant intent is at the time of the transfer. *In re Neumann*, 13 B.R. 128, 130 (Bankr. E.D. Wis. 1981) ("In order to prevail under s 523(a)(2)(A) the plaintiff must show that the [statute's] elements [including "an intent to deceive"] existed at the time that the property/money was obtained[.]"). Facts that could have or should have alerted the Debtors to Yang's fraud that occurred after the Debtors already received the money may not bear on their intent in receiving the money months or years earlier.

familial relations." (Witkowski Decl. Ex. 5, ECF 35-5, ¶ 3; Witkowski Decl. Ex. 6, ECF 35-6, ¶ 3.)  They did not know how Yang and C&K Associates operated the business, and they believed the mortgage loan was legitimate.  (Witkowski Decl. Ex. 5, ECF 35-5, ¶¶ 4, 6-14; Witkowski Decl. Ex. 6, ECF 35-6, ¶¶ 4, 6-14.)

Whether the Debtors acted with fraudulent intent sufficient to prevent discharge under § 523(a)(2)(A) is a question of fact.  The Lee Parties assert that "[i]t defies logic that the [Debtors] did not suspect something was amiss."  (ECF 24 at 18.)  A suspicion that something was amiss is not the same thing as an intent to defraud.  The Lee Parties identified some badges of fraud, but not all are undisputed.  While those facts could ultimately support a finding of intent, they do not *necessarily* lead to a finding of intent.  The Debtors presented their own affidavits essentially averring that they were good faith recipients of the funds.  The statements in the Debtors' affidavits that they lacked knowledge of Yang's fraudulent transfer scheme and intent to participate are not "utterly implausible."  The Court cannot conclude that there are no undisputed issues of material fact such that summary judgment is appropriate for either party with respect to the Debtors' intent.

Finally, there are unresolved questions of fact regarding the amount of the debt that may be declared nondischargeable.  The Court can declare a debt nondischargeable only "***to the extent*** [the money was] obtained by . . . false pretenses, a false representation, or actual fraud[.]"  11 U.S.C. § 523(a)(2)(A) (emphasis added).  This means that "[n]ondischargeability therefore is limited to

35

that portion of the debt directly attributable to fraudulent acts." *In re Christensen*, No. 04 A 3646, 2005 WL 1941231, at *5 (Bankr. N.D. Ill. Aug. 12, 2005); *see also Ojeda v. Goldberg*, 599 F.3d 712, 720 (7th Cir. 2010) ("Because the statute provides that an extension is non-dischargeable 'to the extent' that it is obtained by a false representation, the question for us is what portion of the forbearance is directly attributable to the false representation.") (citing *Christensen* with approval); *In re Poulos*, 636 B.R. 535, 541 (Bankr. N.D. Ill. 2022) ("[I]f the debtor misapplies only a portion of a loan, the amount of the loan not used in the required manner is nondischargeable.").

The Debtors received only $223,190.65 from Yang through C&K Associates. The Court cannot declare the *entire* debt (i.e., the $2,374,290.16 in the state court's September 8, 2022 order) to be nondischargeable if such a declaration is not supported by the evidence.[16]

## CONCLUSION

The Lee Parties' motion for leave to amend the adversary complaint is prejudicially late and is futile. The Lee Parties' claim for a declaration as to the Debtors' claimed homestead exemption is untimely, and the Court will grant summary judgment in favor of the Debtors. With respect to the Lee Parties'

---

[16] The Lee Parties cannot rely solely on the state court's determination that the Debtors' liability is joint and several with the other transferees identified in the complaint in Case No. 2022-CV-162. It is unclear why the Debtors, as transferees, would have liability under Wisconsin law for funds received by *other* transferees. The state court's determination on joint and several liability may be preclusive under a doctrine such as claim preclusion, issue preclusion, the *Rooker-Feldman* doctrine, or another legal theory. However, even if the Debtors are liable outside of bankruptcy for the entire amount, only the amount that was "obtained by" fraud can be declared to be nondischargeable.

nondischargeability claim under 11 U.S.C. § 523(a)(2)(A), there are disputed questions of fact as to the intent element and the amount of money allegedly obtained by fraud.

Accordingly, IT IS HEREBY ORDERED:

1. The Lee Parties' motion for leave to amend the complaint (ECF 32) is DENIED.

2. The Debtors' motion for summary judgment as to the Lee Parties' claim for a declaration that the Debtors cannot claim a homestead exemption in bankruptcy is GRANTED and that claim is dismissed with prejudice.

3. The motions for summary judgment filed by the Lee Parties and the Debtors with respect to the Lee Parties' claim for declaration of nondischargeability under 11 U.S.C. § 523(a)(2)(A) are DENIED.

Dated: March 31, 2026

_____
Rachel M. Blise
U.S. Bankruptcy Judge